**Elmer KADOLPH, Respondent,**

v.

**KOOB IMPLEMENT COMPANY, et al., Relators.**

**Nos. 47428, 48626.**

Supreme Court of Minnesota.

March 2, 1979.

---

Fitch & Johnson and Larry J. Peterson, Minneapolis, for relators.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and Timothy J. McCoy, Minneapolis, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

This court has granted certiorari to review an order of the Workers' Compensation Court of Appeals assessing penalties, filed January 23, 1978. Relators assert that the order does not conform to the terms of the Workers' Compensation Act and is unwarranted by the evidence. We reverse and remand for further proceedings.

The issues presented by this appeal are:

1. May an employer-insurer, under the Workers' Compensation Act, terminate permanent and total disability benefits pursuant to Minn.St. 176.241, or must it proceed under Minn.St. 176.461 to file a petition to vacate the earlier award and receive a favorable ruling before it may terminate such payment?

2. Under the facts of this case may penalties be assessed against an employer-insurer who elects to terminate payments relying upon Minn.St. 176.241?

From the very beginning of this case, the issues have been adjudicated in a disjointed manner. For this reason, we feel that it would be inappropriate for this court to resolve the issues presented at this time. The facts and procedures leading up to this appeal are as follows.

On July 29, 1957, Elmer Kadolph was seriously injured while employed as a mechanic for the Koob Implement Company. He received emergency treatment and thereafter was seen and treated by many neurologists and neurosurgeons for headaches and other complaints. Despite continuing pain, Kadolph returned to work about a month after the accident and remained there until September 1, 1960, at which time he claimed an inability to work and sought compensation for permanent and total disability.

Federated Mutual Implement and Hardware Insurance Company, insurer, denied the claim, and the matter was heard before Referee Hynes. In his decision filed July 15, 1965, Referee Hynes found that Kadolph had a permanent and total disability and ordered compensation to be paid from September 2, 1960, and throughout the period of the disability, subject to the provisions of the Workers' Compensation Act.[1]

The insurer paid compensation until January 27, 1976, when, pursuant to Minn.St. 176.241,[2] it filed a notice of discontinuance as of January 14, 1976, alleging that Kadolph was self-employed and earning more than he did at the time of the injury.[3] Kadolph filed an objection, arguing that the proper procedure was to petition the Workers' Compensation Court of Appeals under Minn.St. 176.461.[4] On June 22, 1976, the employer and insurer (relators) and Kadolph presented their testimony to Compensation Judge Gallagher. He held that he lacked jurisdiction to vacate or modify the original decision because the relators had not petitioned the court of appeals under Minn.St. 176.461 and secured a vacation of the award made by Referee Hynes. Apparently at some point, he also refused a request by the employee's attorney to determine an assessment of penalties under Minn.St. 176.225.[5]

Following the decision, Kadolph appealed to the court of appeals, contending that Judge Gallagher's decision was not in conformity with the Workers' Compensation Act and that the compensation judge had jurisdiction to order the imposition of a penalty.[6]

On December 6, 1976, the court of appeals issued an order which (1) affirmed that

1. The insurer then appealed to the Industrial Commission (now Workers' Compensation Court of Appeals), which affirmed the decision of Referee Hynes.

2. Minn.St. 176.241, subds. 1 and 2, state: "Subdivision 1. * * * Where an employee claims that the right to compensation continues, or refuses to sign or objects to signing a final receipt for compensation, the employer may not discontinue payment of compensation until he notifies the [workers' compensation] division in writing of his intention to do so.

"The notice to the division shall state the date of intended discontinuance, the reason for such action, and the fact that the employee objects to the discontinuance. The notice shall be accompanied by whatever medical reports are in the possession of the employer bearing on the physical condition of the employee at the time of the proposed discontinuance.

"Subd. 2. * * * Except where the commissioner of the department of labor and industry' orders otherwise, until the notice and reports have been filed with the division, the liability of the employer to make payments of compensation continues.

"When the division has received a notice of discontinuance and available medical reports, the duty of the employer to pay compensation is suspended pending an investigation, hearing, and determination of the matter by the division as provided in the following subdivisions."

3. On April 9, 1976, insurer filed another notice of discontinuance as of March 24, 1976.

4. Minn.St. 176.461 provides: "Except where a writ of certiorari has been issued by the supreme court and the matter is still pending in that court or where as a matter of law the determination of the supreme court cannot be subsequently modified, the workers' compensation court of appeals, for cause, at any time after an award, upon application of either party and not less than five days after written notice to all interested parties, may set the award aside and grant a new hearing before itself or refer the matter for a determination on its merits to a compensation judge, who shall make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced and the provisions of this chapter shall require."

5. Minn.St. 176.225, subd. 1, reads, in part: "Upon reasonable notice and hearing or opportunity to be heard, the division or upon appeal, the worker's compensation court of appeals or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

    *   *   *   *   *   *

"(b) unreasonably or vexatiously delayed payment; or,

"(c) neglected or refused to pay compensation; * * *."

6. Shortly thereafter, relators filed a petition wherein they sought reimbursement for amounts paid since March 23, 1976, or, in the alternative, a determination that the findings be reopened and a hearing on the merits granted to establish Kadolph's disability since March 23, 1976.

Compensation Judge Gallagher lacked jurisdiction to hear relators' claim that Kadolph's disability was not permanent and total; (2) declared that the court of appeals would hear the merits of relators' petition to vacate Referee Hynes' award when the necessary transcript was made available; and (3) remanded the matter to the compensation judge to hear Kadolph's claim for assessment of a penalty against relators because they followed Minn.St. 176.241 rather than Minn.St. 176.461 to terminate the total and permanent disability benefits. Thereupon the relators secured, on January 3, 1977, a writ of certiorari from this court. On April 21, 1977, the relators also filed a "Petition to Vacate" with the court of appeals in order to have it vacate Referee Hynes' award. On April 27, 1977, relators were advised by the court of appeals that it did not have jurisdiction to act on its order dated December 6, 1976, unless this court remanded the case. On May 18, 1977, we issued an order to remand the case to the Workers' Compensation Division for further action as appropriate, subject to this court's retention of jurisdiction over matters previously appealed.

The docket clerk of the division then mistakenly set a hearing before the Workers' Compensation Court of Appeals to hear relators' "Petition to Vacate" on August 1, 1977. After the parties appeared on that date, the court of appeals issued an order providing that Compensation Judge Gallagher would first hear the penalty issue, then the court of appeals would hear any appeal from that order, along with the petition to vacate.

On November 1, 1977, Compensation Judge Gallagher heard the issue of assessment of penalty. He subsequently denied the penalty because the correct procedure for modifying or terminating the compensation benefits was not manifestly clear at the time the relators brought suit. Kadolph filed an appeal from that decision, and on January 9, 1978, the court of appeals heard his appeal and the relators' petition to vacate. The court of appeals reversed the ruling of the compensation judge and imposed a penalty under Minn.St. 176.225;

it did not rule on relators' petition to vacate.

On February 21, 1978, relators petitioned for this writ of certiorari. Relators also sought a writ of mandamus to require the court of appeals to hear and decide relators' petition to reopen and vacate, before the other issues are determined. In an order filed May 12, 1978, this court denied the writ of mandamus.

■ We remand this case once again, with instructions that the court of appeals set for hearing and determination as early as convenient the issue raised by relators' petition to vacate the original award of July 15, 1965. This court takes a dim view of these bifurcated appeals. Before a case is ripe for appeal from the Workers' Compensation Court of Appeals to this court, the Workers' Compensation Court of Appeals should decide all issues presented to it, including the issue whether an employer is justified in terminating permanent and total disability benefits.

■ The question of assessing penalties may be affected by the decision whether there are grounds for vacating the original award. Surely, for purposes of deciding whether to impose a penalty, greater weight is to be given to the determination whether there is merit to relators' petition to vacate the original award than to the determination whether relators followed the correct procedure to vacate or modify that award. If the court of appeals finds that the relators' claim has merit, then any penalty would be mitigated despite the initial use of the improper procedure.

Once the court of appeals had determined that the compensation judge lacked jurisdiction to decide whether the relators had the right to terminate payments under Minn.St. 176.241, and as soon as the relators had filed the petition to vacate under Minn.St. 176.461, the court of appeals should have set a hearing to determine the merits of relators' claim. Either party could then appeal to this court any or all issues raised at the hearing.

The award of penalties is therefore reversed and the entire file and issues remanded to the Workers' Compensation Court of Appeals, without awarding costs or attorneys fees to either party, for a decision consistent with this opinion.